## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2019, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Richardson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 27, 2019 <br><br> Court of Appeals Case No. 19A-CR-1492 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Kristen McVey, Judge <br><br> Trial Court Cause No. 79D05-1808-CM-3909 |

**Baker, Judge.**

Eric Richardson appeals his conviction for Class A Misdemeanor Trespass,[1] arguing that the evidence is insufficient to support the conviction. Finding the evidence sufficient, we affirm.

## Facts

Jarrod Resler is the property manager for B. Walker Property Management Company (Walker). Walker manages about a hundred properties in Lafayette, including a residence on Alabama Street. Approximately every six months beginning in 2017, Resler signed, on behalf of Walker, a document entitled "Private Property Affidavit To Authorize Lafayette Police Trespass Enforcement[.]" Tr. Ex. 1. This agreement states that Lafayette Police officers are considered "Authorized Agent[s]" of Walker and are authorized to, among other things, provide non-resident individuals with criminal trespass warnings and arrest subsequent violators. *Id.* The agreement was renewed every six months and did not expire.

The Alabama Street residence was leased by Walker to Lucas Schemeke and Jason Farris. Farris is a client of social worker Carol Jo Towns Brooks, who is a case manager for Valley Oaks Health. Brooks explained that Farris is a member of the ACT Team, which is "the part of Valley Oaks Health that deals with the severely mentally ill people. They have to have a diagnosis of schizoaffective, schizophrenia, manic depression, a number of things they have

---

[1] Ind. Code § 35-43-2-2(b)(1).

to have in order to be on the ACT Team." Tr. Vol. II p. 18. Farris has been diagnosed with schizoaffective disorder, and Brooks assisted Farris with daily living activities, including grocery shopping and housekeeping.[2]

[4] On June 28, 2018, Brooks called the Lafayette Police Department on Farris's behalf to report that "there were multiple subjects sleeping inside [Farris's] residence that were not supposed to be there." *Id.* at 11. Brooks believed that Farris was being taken advantage of because people, including Richardson, often stayed overnight without paying rent. Officer Neil Cain responded to Brooks's call. Both Brooks and Farris requested that Richardson and the other guests at the residence be asked to leave and be warned for trespassing. Officer Cain provided the warning to the guests, including Richardson, and directed them to leave.

[5] At some point, the Alabama Street residence became known to the police as a place that required extra attention because Schemeke and Farris were both on the ACT Team and were possibly being taken advantage of. On August 28, 2018, Officer Christopher Cudworth drove to the residence to check on the occupants. Neither of the tenants were present, but Richardson was there. Officer Cudworth checked with dispatch and learned that Richardson had been warned for trespass at the same residence two months earlier by Officer Cain. As a result, Officer Cudworth arrested Richardson.

---

[2] Farris's co-tenant, Schemeke, is also on the ACT Team.

On August 29, 2018, the State charged Richardson with Class A misdemeanor trespass. Following Richardson's March 19, 2019, bench trial, the trial court found him guilty as charged. Richardson was sentenced to four days, time served. Richardson now appeals.

# Discussion and Decision

Richardson's sole argument on appeal is that the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

To convict Richardson of Class A misdemeanor trespass, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally entered the real property of Walker after having been denied entry by Walker or its agent and that Richardson lacked a contractual interest in the property. I.C. § 35-43-2-2(b)(1).[3] Richardson argues only that the evidence does not establish that Officer Cain was acting as Walker's agent.

---

[3] The charging information alleges that the residence was the property of Walker and that the officer who gave the initial trespass warning was acting as an agent of Walker. It does not allege that the residence was the property of Farris or that the officer or Brooks were acting as his agent, even though Farris and Brooks, on Farris's behalf, asked the officer to give the warning.

[9] When one person gives another person authority to act on his behalf, an agency relationship is created. *E.g.*, *Glispie v. State*, 955 N.E.2d 819, 822 (Ind. Ct. App. 2011). An agency relationship may be actual or apparent. *Id.* To establish an actual agency relationship, three elements must be proved: (1) manifestation of consent by the principal (*i.e.*, Walker); (2) acceptance of authority by the agent (*i.e.*, the Lafayette Police Department); and (3) control exerted by the principal over the agent. *Id.*

[10] Here, the Lafayette Police Department signed a semiannual agreement with Walker, pursuant to which Lafayette Police officers are authorized agents of Walker to issue trespass warnings on its behalf. Tr. Ex. 1. This agreement is a manifestation of Walker's consent to enter into an agency relationship with the Lafayette Police Department and a manifestation of the Police Department's acceptance of authority.[4] The agreement directs the Lafayette Police Department to "protect the aforesaid property" by warning for trespass, ejecting non-residents from the property if they become problematic or commit crimes, and arresting non-residents for subsequent violations. *Id.* We can only conclude that this provision shows control exerted by Walker over the police, inasmuch as it directs the officers to engage in certain behavior on Walker's behalf. In other words, the agreement establishes that Lafayette Police Officer

---

[4] Richardson notes that the only agreement entered into evidence at trial is one that was executed in August 2018—after Officer Cain provided the first trespass warning. Resler testified at trial that he had entered into this same agreement with the police approximately every six months since 2017, meaning that the agreement was in place at the time of the warning. Tr. Vol. II p. 5-8. The fact that the agreement that was current at the time of the trespass warning was not entered into evidence is irrelevant, given Resler's testimony.

Cain was acting on Walker's behalf—as its agent—when he gave Richardson the first trespass warning. Because we find an actual agency relationship, we need not also consider whether there was an apparent agency relationship.

[11] In sum, we find the evidence sufficient to support Richardson's Class A misdemeanor trespass conviction.

[12] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.