## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 05 2018, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| John J. Kennelly | Curtis T. Hill, Jr. |
| Fishers, Indiana | Attorney General of Indiana |
| | Evan Matthew Comer |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John J. Kennelly, | September 5, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-412 |
| v. | Appeal from the Hamilton Superior Court |
| State of Indiana, | The Honorable Gail Z. Bardach, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 29D06-1709-CM-7081 |

**Baker, Judge.**

[1] John Kennelly appeals his conviction for Class A Misdemeanor Criminal Trespass,[1] arguing that there is insufficient evidence to support the conviction. Finding the evidence sufficient, we affirm.

# Facts

[2] On September 27, 2017, Deborah Majeski, a second-grade teacher at Lantern Road Elementary School, which is part of the Hamilton Southeastern School Corporation, was approached by one of her students during recess. The student said a stranger, later identified as Kennelly, was watching them just outside the school's playground and taking pictures.

[3] Majeski contacted Principal Danielle Thompson for help. Principal Thompson then contacted Lieutenant Mike Johnson of the Fishers Police Department for assistance with the matter. Lieutenant Johnson is a Student Resource Officer (SRO). SROs are hired by local schools for increased security. Lieutenant Johnson also supervises the district's six SROs, whose duties include security detail for student safety. SROs must complete forty hours of training and are given keys to the buildings in which they work. The city of Fishers pays half of the SROs' salaries, and the school district pays the other half.

[4] Lieutenant Johnson arrived at the playground, but Kennelly had already left the school. Other police officers stopped Kennelly a short distance away from the

---

[1] Ind. Code § 35-43-2-2(b)(1).

school and cited him for driving without a license. Lieutenant Johnson soon arrived and asked Kennelly why he had been at the elementary school. Kennelly refused to answer. Lieutenant Johnson took down Kennelly's information and released him.

[5] Lieutenant Johnson then returned to the school to discuss the matter with Principal Thompson. As an SRO, Lieutenant Johnson is required to report to Principal Thompson regarding all disciplinary, safety, and security matters. They entered Kennelly's name into the school's database and determined that he was not related to anyone in the building.

[6] Afterwards, Lieutenant Johnson left and discovered Kennelly once again near the school's playground. Lieutenant Johnson approached Kennelly and again asked him why he was there. Two other officers, Officer Tracy Marsh and Officer Tracy Jones, responded to the scene to assist Lieutenant Johnson. Both officers watched Kennelly while Lieutenant Johnson called a local prosecutor to determine if they could arrest Kennelly.

[7] After finishing the call, Lieutenant Johnson warned Kennelly not to return to the school's property. Kennelly dismissed the warning. Lieutenant Johnson repeated his warning and stated that he would be arrested if he returned to the school. The officers released Kennelly, who promptly left the scene. Shortly thereafter, Lieutenant Johnson and the two officers saw Kennelly driving back to the school. They pursued him and found him trying to enter the school through the front office.

[8]     Officer Jones arrested Kennelly. Later that day, the State charged Kennelly with Class A misdemeanor criminal trespass.

[9]     Kennelly's bench trial took place on January 31, 2018. Kennelly was found guilty and was sentenced to 365 days in the Hamilton County Jail with 363 days suspended to probation. Kennelly now appeals.

# Discussion and Decision

[10]    Kennelly's sole argument on appeal is that the State failed to present sufficient evidence to show that Lieutenant Johnson is an agent of the Hamilton Southeastern School Corporation.

[11]    When reviewing the sufficiency of the evidence supporting a conviction, we must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). It is not our job to "reweigh the evidence nor judge the credibility of the witnesses," and "we consider any conflicting evidence most favorably to the trial court's ruling." *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005).

[12]    To convict Kennelly of Class A misdemeanor criminal trespass, the State was required to prove beyond a reasonable doubt that Kennelly, who did not have a contractual interest in the property, knowingly or intentionally entered the school's property after having been denied entry by an agent of the school corporation. I.C. § 35-43-2-2(b)(1).

[13] At issue is the nature of the relationship between Lieutenant Johnson and the Hamilton Southeastern School Corporation. Kennelly argues that no agency relationship existed between the lieutenant and the school corporation. We disagree.

[14] For an agency relationship to exist, "three elements must be shown: (1) manifestation of consent by the principal; (2) acceptance of authority by the agent; and (3) control exerted by the principal over the agent." *Demming v. Underwood*, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011). There is no requirement that the agent's authority to act be in writing. *Id*. All three elements must be present for an individual to have authorization to act as an agent on behalf of the principal.

[15] As to the first and second elements, there is no dispute. Lieutenant Johnson maintains the title of SRO for the school corporation, and he was acting in that capacity when he warned Kennelly multiple times not to return to the school. He was given keys to the building and tasked with different duties primarily related to the school's security and to disciplining the students. Additionally, the school corporation paid half his salary. Therefore, the school corporation manifested its consent to hold Lieutenant Johnson as its agent, and Lieutenant Johnson accepted the authority by assuming the role of SRO. Moreover, I.C. section 20-26-18.2-1(a)(2)(ii) explicitly provides that a school corporation may use SROs "to prevent unauthorized access to school property." In other words, the Indiana General Assembly has spoken directly on this matter and intends for school corporations to entrust SROs with the authority to keep schools safe.

As to the third element, Kennelly claims there is some ambiguity. Specifically, he argues that Lieutenant Johnson is wholly employed not by the school corporation but rather by the Fishers Police Department. Consequently, Kennelly maintains that the control exerted over Lieutenant Johnson's decisions comes directly from his law enforcement supervisors rather than from the school corporation.

It is readily apparent that officers like Lieutenant Johnson can wear "different hats" in different capacities. While Lieutenant Johnson is a city police employee, he is also an employee of the school corporation and subjects himself to the control of the corporation through Principal Thompson. The record shows that Lieutenant Johnson throughout this incident checked and double-checked with Principal Thompson before taking any enforcement action against Kennelly. While Lieutenant Johnson also checked with a local prosecutor regarding the possibility of arresting Kennelly, Principal Thompson simultaneously retained authority over Lieutenant Johnson's actions, and Lieutenant Johnson always reported to Principal Thompson for authorization to act on matters related to school safety. This is one such matter.

The State correctly points us to our prior decision in *Berry v. State*, 4 N.E.3d 204 (Ind. Ct. App. 2014), in which we held that a police officer could serve as an agent for another entity—in addition to his or her respective law enforcement department—if there was a well-documented relationship with said entity. Consequently, although Lieutenant Johnson was an employee of the Fishers Police Department, he also worked under the control of the school corporation

with the authority to search, secure, and restrict individuals who wanted to enter the school.

[19]     Both parties cite *Glispie v. State*, 955 N.E.2d 819 (Ind. Ct. App. 2011), as a benchmark for how we determine if an agency relationship has been created. In that case, Officer Patrick McPherson of the Indianapolis Metropolitan Police Department was investigating an incident of trespassing outside a commercial building. *Id*. at 821. The business did not employ Officer McPherson, nor was there any preexisting relationship between the two. Officer McPherson was dispatched to this location simply because he was available to investigate a reported incident that evening. Officer McPherson discovered Glispie and another man "in the rear" of the building and warned them that they were trespassing. *Id*.

[20]     Like Kennelly in this case, Glispie appealed his conviction for criminal trespass, arguing that there was insufficient evidence to prove that Officer McPherson was an agent of the business. In *Glispie*, we held that an officer could not hold himself out as an agent to warn two individuals not to trespass solely based off his testimony that he "could act as an agent of the property." *Id*. at 822. In short, we said that "[m]ore is required," *id*., which Kennelly is quick to point out. Kennelly argues that more was required of the State in this case to show that Lieutenant Johnson was an agent of the school corporation. Here, as we have already found, the State offered a wealth of evidence showing a pre-existing relationship between Lieutenant Johnson and the school corporation. Therefore, *Glispie* is inapposite as in this case, and the State has met its burden.

For the foregoing reasons, we conclude that there is sufficient evidence supporting Kennelly's conviction.

The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.